UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 22-cr-10312-WGY |
| DIMITRI MCKENZIE | ) | |
| | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Now comes the defendant, Dimitri McKenzie, and submits the following memorandum in support of his request for 120 months incarceration, followed by five years of supervised release.

### A. Personal History

Mr. Mckenzie grew up with loving and supportive parents in Boston.  He attended high school at Lincoln-Sudbury Regional High School through the Metropolitan Council for Educational Opportunity ("METCO") program. P.S.R. ⁋ 43-44. As a young Black man from a middle class background, he struggled to connect socially in high school due to the economic and racial disparities between him and his peers in the predominantly White and affluent suburban school.  P.S.R. ⁋ 44. Although he played sports in elementary and middle school, the distance and lengthy commute between his home and school made it too logistically difficult to play sports in high school. *Id*.  After high school, he lived at home and attended Eastern Nazarene College in Quincy, studying computer science. P.S.R. ⁋ 63.  He stopped going to college due to his inability to continue paying for it and began working full-time prior to completing his degree. *Id*. At the time of his arrest he had been working at WFSbos, a cargo shipping company coordinating cargo shipments for British Airways at Logan Airport.  P.S.R. ⁋ 68.

Mr. McKenzie has struggled with his anxiety and depression throughout his life, at times experiencing suicidal ideation.  P.S.R. ¶ 57.  During 2020 and 2021 (a year before his arrest) Mr. McKenzie participated in counseling, but he did not have a good experience, and he stopped going. At trial, Mr. McKenzie testified that he was having a "really tough time" in terms of his mental health in the time leading up to his arrest.  Tr. at 5-6.  On the morning of his arrest, he was feeling lonely and depressed.  TR. at 9. He believes he used commercial sex because it gave him validation after being bullied and told that he was ugly while he was growing up. Tr. at 8-9. He explained that while the anticipation of setting up a commercial sex date "felt good," but that he felt an "immense amount of shame" afterward.  Tr. at 8. After his arrest, he re-engaged in counseling with North Suffolk Mental Health and attended therapy on a weekly basis. He found therapy to be very helpful and "life changing." P.S.R. ¶ 58. These sessions helped him to begin to develop coping skills to better manage his feelings of anxiety.  P.S.R. ¶ 58.

Unfortunately, and despite the fact that he is very close to them, Mr. McKenzie did not share his mental health struggles with his parents and began isolating himself from his family and peers. Despite his difficulties with anxiety, depression and the shame he felt after engaging in commercial sex, Mr. McKenzie was and is motivated to improve his life. In the days leading up to his arrest, he created a note on his phone dedicated to his own self-improvement, labeled "Areas of Life to Focus On."  *See* Exhibit B (phone note).  The note set goals of meditation, exercise, financial improvement, Bible study, and employment.  *Id*.  Despite serious struggles with his mental health and depressed mood, he had been trying to improve his life.  He had also made efforts to become more involved in his church, the Bedford Street Church of Christ. Even after his arrest, the church community continued to be extremely supportive, counseling him and supporting him despite his arrest and then pending charge.  He has been described as a shy young

man who comes alive when he talks about the word of God.  *See* Exhibit A at 3.  Since his arrest, he has found solace in the Bible and in connecting in fellowship with members of his church.

### B.  Sentencing Guidelines

Mr. McKenzie agrees with the Probation Department's calculation of the guidelines, except for his objection to paragraph 24, setting the base offense level at 30.  P.S.R. ¶ 24. He objects because he believes that his offense level should have been reduced by 3 levels because he was convicted[1] of attempted sex trafficking, pursuant to 18 U.S.C. 1594, not sex trafficking under 18 U.S.C. 1591.  U.S.S.G. § 2X1.1(b)(1).  Under the attempt guidelines in § 2X1.1, because the sex trafficking guideline does not specifically apply to attempts, a 3-level reduction is appropriate "unless the defendant completed all the acts the defendant believed necessary for successful completion of the substantive offense or the circumstances demonstrate that the defendant was about to complete all such acts but for apprehension or interruption by some similar event beyond the defendant's control."  Neither § 2X1.1 exclusionary situation applies in Mr. McKenzie's case because he had not completed the commercial sex act (an act necessary to completion of the offense) and the commercial sex act was impossible because the object of the intended sex act was a factual adult and therefore, the prohibited act was incapable of being completed because no minor child was actually involved.

### C.  Disparity of Harms Covered by Statute

Whether it is through a departure under §5K2.0(a)(2)(B), a reduction in offense level under 2X1.1(b)(1), a minor role reduction under 3B1.2, or simply as a variance taking into consideration the 18 U.S.C. 3553(a) factors, this Court should sentence Mr. McKenzie to the minimum statutory sentence of 120 months because this statute generally applies to person who

---

[1] *See* Verdict Form, document no. 84.

engage in the actual sex trafficking of minors for renumeration on an ongoing basis.  The statute

covers a wide swath of conduct with differing degrees of harm. To sentence Mr. McKenzie to the

same or similar punishment as a sex trafficker would create an unjust sentencing disparity. The

extraction of Mr. Mckenzie's phone did not show any pictures, messages, or other evidence that

he had a sexual interest in children or that he had every purchased sex from someone he was told

was a child on any previous occasion. Mr. McKenzie was an insecure person struggling with

loneliness, depression, and feelings of inadequacy. He is not like other defendants prosecuted

pursuant to the statute, who seek out vulnerable children/adolescents, photograph them,

disseminate their images and force them to engage in repeated and multiple commercial sex

dates in a systematic way.

There is a fundamental difference between a pimp who takes advantage of children and

forces them to perform sex acts for their own greed and a person suffering from a mental illness

who agrees to be a buyer on a single occasion. Although sex addiction is not a recognized mental

health condition under the Diagnostic and Statistical Manual of Mental Disorders ("DSM") 5,

there are a plethora of support groups and services available for people struggling with

compulsive sexual behavior, similar to those available for substance use disorder.  *See* Signs and

Symptoms of Sex Addiction, WedMD, available online at: https://www.webmd.com/mental-

health/addiction/signs-sex-addict .

The Eighth Circuit noted the distinction between the various types of conduct covered by

the statute, cautioning against broad application of the statute against purchasers as opposed to

sex traffickers stating "…we do note with some concern the potential for abuse created by broad

application of this statute. A first-time buyer of commercial sex such as *Wolff*, where the

ostensible victim is in fact an undercover officer, faces the same ten or fifteen-year mandatory

4

minimum as a sex trafficker who exploits actual children for commercial sex." *United States v. Wolff*, 796 F.3d 972, 975 (8th Cir. 2015) (*citing United States v. Jungers*, 702 F.3d 1066, 1075 (8th Cir. 2013) ("We hold § 1591 applies to a purchaser of commercial sex acts who violates the statute's terms.")). The Court expressed the expectation that prosecutors would use their charging discretion wisely: "[W]e hope that fair-minded prosecutors would take into consideration the nature of the harm at issue as well as the characteristics and conduct of the particular defendant when exercising their discretion in deciding what charges to pursue in a given case." *Wolff*, 796 F.3d at 975 (8th Cir. 2015).

### D. The Obstruction of Justice Enhancement Under 3C1.1 and Application Note 4(B) Does Not Apply.

It is well-established that a criminal defendant has "the right to take the witness stand and to testify in his or her own defense." *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). The underpinnings of this fundamental right are found in the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. *Id.* at 51-53. In explaining the Sixth Amendment rationale, the Court noted, that "[a] defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness." *Id.* at 52. The Constitution and the attendant rights guaranteed to Mr. McKenzie are thus the backdrop to consideration of whether an enhancement based on obstruction of justice is warranted in this case. Mr. McKenzie submits that it is not and contends that there is no basis in fact or law for such an enhancement in the circumstances of this case.

First, the circumstances of the offense and the evidence adduced at trial do not establish that Mr. McKenzie committed perjury during his testimony. In contrast to the circumstances in *United States v. McKeeve*, 131 F.3d 1, 15 (1997) where the First Circuit affirmed such an enhancement, the evidence at Mr. McKenzie's trial did not include "an overwhelming weight of

credible evidence" which contradicted the substance of his testimony as to his intent. *Id.* at 15. In *McKeeve*, the question was whether the defendant's trial testimony that he did not know his actions in trying to effectuate a shipment of goods to Libya (in violation of a trade embargo) were illegal was perjurious. In finding that the obstruction enhancement was warranted, the Court noted that "[n]umerous witnesses testified to incriminating statements and conduct" that contradicted the defendant's assertion at trial that he did not know what he was doing was unlawful. *Id.*

In arguing for the enhancement, the Government does not (and cannot) support its argument by pointing to the testimony of other witnesses or evidence of conduct by the defendant which contradicts his own testimony that he did not intend to engage in commercial sex with a 14 year old. Instead, the government's argument is that the jury's guilty verdict establishes that the defendant's testimony is false. That is far less than what the Court found persuasive in upholding the obstruction enhancement in *McKeeve* where there was evidence beyond just the trial testimony of the defendant and the jury's guilty finding to establish that McKeeve gave "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *Id.* citing *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). The government's reliance on *United States v. Norton*, 48 F.4th 124 (3d. Cir. 2022) is also inapposite. In *Norton*, the Third Circuit upheld the obstruction enhancement where the District Court's findings regarding the applicability of the enhancement related to the defendant's testimony that she never intended to engage in sexual activity with the minor victim. This testimony was belied by evidence of the frequency and content of her electronic messages with the minor victim that suggested otherwise. Here, unlike the situation in *Norton*, there were no messages that purported to be between Mr. McKenzie and

the so-called minor, therefore, there was no trial evidence – beyond his testimony – which provided insight as to his true intent. In the absence of this additional evidence, there is no basis for this Court to find that Mr. McKenzie "gave false testimony concerning a material matter with the willful intent to provide false testimony." *McKeeve*, 131 F.3d at 14-15. A guilty finding does not equate to a finding that Mr. McKenzie committed perjury. The cases cited by the Government both involve a greater quantum of evidence at trial as to the falsity of the defendants' statements than what was involved here.

Moreover, application of the obstruction enhancement in a case such as this – where a defendant chooses to exercise his fundamental constitutional right to testify – would set an unjust precedent and have a chilling effect on the rights of future defendants to testify at trial.

Finally, application of the obstruction enhancement is not appropriate because the indictment includes two alternative mental states as to the defendant's knowledge of the age of the purported child involved. 18 U.S.C. § 1591 states in relevant part that "whoever knowingly … or in reckless disregard of the fact that the purported minor had not attained the age of 18 years" shall be guilty of the offense of sex trafficking of a minor. In its instructions to the jury, see Excerpt, Judge's Charge to the Jury, docketed at #79, page 16, the Court explained the scienter to the jury as follows:

> Second, Mr. McKenzie knew that the object of the commercial sex act was a child who had not obtained the age of 18 years or that he was acting in reckless disregard of whether that person was 18 or not. And so you have in mind -- first of all, he has to have intended sex for money. Now this is only an attempt, because there really wasn't a person here in the room. An attempt to do that. And then the second point is he has got to know or at least genuinely believe that the person who is being offered for the commercial sex act is a minor under the age of 18 years or he was acting in reckless disregard, he didn't care whether the person was or was not.

7

Where the offense in this case involves two alternative mental states, one of which is recklessness, and where both theories of liability were presented to the jury, and where, as here, the basis for the jury's finding as to the defendant's knowledge of the purported child's age is unknown, application of the obstruction enhancement is unwarranted because it is possible that the jury found that Mr. McKenzie acted with "reckless disregard," as to the child's age, not willfully. If the defendant's mental state as to the age of the purported child was reckless, it cannot be that he also had the "willful intent to provide false testimony," and therefore, the obstruction enhancement is inapplicable.

### E.  Sentencing Entrapment

Finally, Mr. McKenzie contends that a downward departure is warranted because the design of the sting operation leading to Mr. McKenzie's arrest and conviction amounted to sentencing entrapment. A defendant may be eligible for a downward departure or variance for sentencing entrapment where he "can show he was predisposed to commit a minor or lesser offense, but was entrapped to commit a greater offense, subject to greater punishment . . . ." *United States v. Boykin*, 785 F.3d 1352, 1360 (9th Cir. 2015), citing *United States v. Mejia*, 559 F.3d 1113, 1118 (9th Cir. 2009). The burden is on the defendant to establish, by a preponderance of the evidence, that he had both the lack of intent and the lack of capability to engage in the act constituting the offense. *See Mejia*, 559 F.3d at 1118.

Here, Mr. McKenzie was unequivocal in his testimony that he did not have the intent to engage in commercial sex with a minor. The dearth of any extrinsic evidence from the data extracted from his phone establishing a sexual interest in minors buttresses his testimony and suggests that, in fact, he was not predisposed to commit a sexual offense involving minors. Furthermore, because the sting operation designed by the Government did not involve any actual

8

minor children, Mr. McKenzie lacked the capability to engage in the act of commercial sex with

a minor. Therefore, because he was not predisposed to engage in commercial sex with a minor

and, in the circumstances of this case, incapable of doing so because no minor was involved,  a

downward departure is warranted.


                                                  Respectfully submitted,

**Date**:   October 4, 2024                    Dimitri McKenzie

                                                By his Attorneys,

                                                  */s/ Alyssa Hackett*
                                                  Alyssa Hackett, *she/her* B.B.O. 676880
                                                  Law Office of Alyssa T. Hackett
                                                  55 Union Street, 3rd Flr., Boston, MA 02108
                                                  ahackett@hackett-law.com

                                                  */s/ Jennifer A. Sunderlandt*
                                                  Jennifer A. Sunderland, B.B.O. 673278
                                                  Sunderland Law LLC
                                                  88 Broad Street, Suite 101
                                                  Boston, MA 02110
                                                  jsunderland@sunderland-law.com


**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
on October 4, 2024.

                                                  */s/ Jennifer A. Sunderland*

                                                  Jennifer A. Sunderland